UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| DANNY LEE BALLARD AND | ) CASE NO. 07-61486 |
| MARIETTA NAPA BALLARD, | ) |
| | ) JUDGE RUSS KENDIG |
| Debtors. | ) |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT INTENDED FOR** |
| | ) **PUBLICATION)** |

The United States Trustee (hereafter "UST") filed a motion to dismiss this bankruptcy case under 11 U.S.C. §§ 707(b)(1), (2) and (3) on September 12, 2007. Debtors filed a response objecting to UST's motion on September 24, 2007. A hearing was held on November 5, 2007, at which the Court established a briefing schedule. The issue presented arises under 11 U.S.C. § 707(b)(2) and concerns a mortgage obligation. Prior to filing the petition, Debtors' residential real property was subject to a foreclosure action and a judgment of foreclosure was issued in state court. The issue is whether Debtors may take a deduction for the mortgage expense in light of the foreclosure judgment? Both parties submitted legal memoranda in support of their respective positions.

The court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Debtors filed a joint chapter 7 petition on May 22, 2007. At the time of filing, Debtors' voluntary petition indicated that Debtors resided at 167 Plymouth Street, Bucyrus, Ohio, which they rented for $450.00 per month. According to the Statement of Financial Affairs, Debtors' former residence, where they lived through April 2007, was 3615 Chatfield Center Road, Bloomville, Ohio.[1] Debtors stated they intend to surrender the Chatfield property. Debtors were purchasing this property and the monthly mortgage payment was $1,083.00. The property was subject of a prepetition foreclosure proceeding and a foreclosure judgment was issued by the Crawford County Court of Common Pleas on April 3, 2007.

---

[1] Debtors now assert, at the hearing and in their brief, that they lived at Chatfield until June 1, 2007 and continue to have some belongings at the Chatfield property.

When Debtors filed their petition, they claimed the mortgage expense of $1,083.00 as an expense deduction on line 42(a) of the B22A. Additionally, since the mortgage was in default, Debtors claimed $133.33 as a cure amount on Line 43a of the B22A. They did not take a deduction for the rental payment on the B22A.

## LAW AND ANALYSIS

The issue is whether Debtors are entitled to take an expense deduction for a mortgage when a prepetition judgment of foreclosure was issued? UST argues against allowance of the deduction, contending that the judgment merges the obligation on the note into the judgment and there is no longer a contractual amount due under the note. Debtors posit that the relevant fact is their continued ownership of the property. Since a foreclosure sale has not been confirmed to divest them of their ownership interest, and they have not been discharged of their obligation to the mortgage company, they argue they are entitled to the expense deduction.

On Line 42 of Official Form 22A (Chapter 7), a debtor may take an expense deduction for "Future payments on secured claims." The explanation provided for Line 42 states:

> For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, and state the Average Monthly Payment. The Average Monthly Payment is the total of all amounts contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60. Mortgage debts should include payments of taxes and insurance required by the mortgage.

Section 707(b)(2)(A)(iii)(I) is the statutory genesis of Line 42 and provides:

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as

> collateral for secured debts; divided
> by 60.

Average monthly payment is a defined term under section 707(b)(2)(A)(iii)(I) and the definition specifically references amounts "contractually due." UST contends that since the contract merged into the judgment, there are no longer amounts contractually due.

The doctrine of merger has been summarized as follows:

> The doctrine of merger is one aspect of the larger principle of res judicata. <u>46 Am.Jur.2d Judgments § 383 (1969)</u>. The general rule of merger is that when a valid and final personal judgment is rendered in favor of plaintiff, the plaintiff cannot maintain a subsequent action on any part of the original claim. <u>Restatement, Second Judgments § 18 (1980)</u>. The original claim merges into the final judgment. The effect of the merger is that the old debt ceases to exist and the new judgment debt takes its place. The judgment becomes 'the evidence of the debt, or the sole test of the rights of the parties . . .' <u>46 Am. Jur.2d Judgements § 390 (1969)</u> (footnotes omitted).

<u>In re Schwartz</u>, 77 B.R. 177, 180 (Bankr. S.D. Ohio 1987) (citing <u>In re Schlecht</u>, 36 B.R. 236, 240 (Bankr. D. Ak. 1983)). Further elucidation was provided by the court in <u>Catawba West, Inc. v. Domo</u>:

> The doctrine of merger, like the related principle of *res judicata*, operates to prevent an endless number of suits and judgments on the same cause of action. <u>Brigel v. Creed</u>, 65 Ohio St. 40, 44 (1901). In general, when a final judgment is rendered in an action for breach of contract, 'all the damages and causes of action arising from such breach of the contract, [sic] become merged into such judgment.' <u>Cockley v. Brucker</u>, 54 Ohio St. 214, 227 (1896). Thus, the merger doctrine operates as a bar to successive suits based upon the same contract.

1993 WL 155633, *2 (Ohio App. 6 Dist. 1993) (unpublished).

UST cites two cases in support of its merger/extinguishment argument. The second case cited by UST invokes the doctrine of merger for its intended purpose, to prevent duplicative litigation, and also is not particularly helpful to the present analysis. <u>Public Fin. Corp. of Warren v. Tate</u>, 197 N.E.2d 825 (Oh. App. 7 Dist. 1963). The first case is a domestic relations-related case wherein the Bankruptcy Appellate Panel for the Sixth Circuit referenced specific Ohio law governing the merger of a separation agreement into a judgment entry in a domestic relations case: "[a] decree which incorporates an agreement is a decree of court nevertheless, and as soon as incorporated into the decree the separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such." <u>Gibson v. Gibson (In re Gibson)</u>, 219 B.R. 195, 204 (B.A.P. 6th 1998) (citations omitted). The court further expounded:

> It might be noted that the liability of each party to Mr. Perdue under the original Note was unaffected by the Dissolution Decree. Ms. Gibson and the Debtor remained jointly liable on the Note to Mr. Perdue exactly as they had been prior to the dissolution. *As between the Debtor and Ms. Gibson, however, the domestic relations court's entry of the Dissolution Decree had significant new legal consequences.* The entry of the Dissolution Decree extinguished all pre-existing obligations of the parties to each other, whether those obligations existed under the Separation Agreement or otherwise. The Separation Agreement incorporated into the Dissolution Decree replaced those obligations with new ones fully enforceable as a judgment of the domestic relations court. Further, in the Dissolution Decree, the Debtor incurred an additional obligation in favor of Ms. Gibson to pay any and all debts to his parents, including the Note to Mr. Perdue. This obligation is fully enforceable by Ms. Gibson against the Debtor. Finally, and most significantly, Ms. Gibson obtained, as a result of applicable Ohio law, a new right to payment and related enforcement rights, all of which were incurred by the Debtor in connection with the parties' Separation Agreement as incorporated into the domestic relations court's Dissolution Decree.

Id. at 204-5 (emphasis original). Although Gibson is not completely analogous, because the separation agreement is fully incorporated into the final decree, it does demonstrate that the judgment provides the basis for arbitration of the parties' rights, not the underlying separation agreement. On this point, Gibson is persuasive.

There is no question that, by operation of law, the doctrine of merger works to merge the contract, in this case the promissory note secured by the mortgage, into the foreclosure judgment. Upon merger, a majority of courts find that the contract terms are extinguished. *See, e.g.*, Stendardo v. Federal Nat'l Mortgage Ass'n (In re Stendardo), 991 F.2d 1089 (3rd Cir. 1993) (finding that merger extinguishes the mortgage terms unless the contract evinces a specific intent for term(s) to survive; court declined to allow mortgage company to add taxes and premiums to the foreclosure judgment); Dobin v. Washington Mut. Bank, F.A. (In re Loehwing), 320 B.R. 281 (Bankr. D. N.J. 2005) (concluding, under New Jersey law, that the foreclosure judgment extinguished the contract but permitting the sheriff's fees from the sale to be added to the foreclosure judgment); In re McKillips, 81 B.R. 454 (Bankr. N.D. Ill. 1987) (finding that once merger occurred, oversecured creditor was not entitled to add attorney's fees and costs permitted under 11 U.S.C. § 506(d)); Schwartz, 77 B.R. at 181 (determining that rights to attorney's fees under a note was extinguished upon entry of the final judgment but, on a separate set of facts, determining that attorney's fees may be allowable under a mortgage lien because the "mortgagee's lien rights are not extinguished until the sale of the property has been consummated"). The Court is in agreement with this line of decision.

Debtors' position that a contractual obligation persists is not well-taken. First, Debtors argue that their continued ownership of the property, and the fact that their debts have not yet been discharged, is key to finding against UST. The Court disagrees. First, Debtors' argument bypasses the heart of the UST's position concerning the effect of the judgment on the contractual liability. Their ownership of the property is irrelevant to the contractual liability on the note, either before the judgment or after the judgment. At the time of filing, the liability to the mortgage company was not based upon the contract, but upon the judgment. As outlined above, the contract ceased to exist upon entry of the judgment. Debtors are liable on the judgment and their liability remains secured by the real estate; thus scheduling the property on Schedule D was appropriate. However, since their liability is no longer contractual, the debt cannot be "scheduled as contractually due" under 11 U.S.C. § 707(b)(2)(A)(iii)(I) and therefore is not an acceptable expense on Line 42. *See also* In re Brandenburg, 2007 WL 1459402 (Bankr. E.D. Wis. 2007).

Debtors rely on cases from sister courts, all determining that a debtor's intention to surrender secured property does not impact the ability to claim the expense deduction on Line 42. *See* In re Zak, 361 B.R. 481 (Bankr. N.D. Ohio 2007) (Youngstown); In re Wright, 364 B.R. 640 (Bankr. N.D. Ohio 2007) (Toledo); In re Haar, 360 B.R. 759 (Bankr. N.D. Ohio 2007) (Toledo); In re Simmons, 357 B.R. 480 (Bankr. N.D. Ohio 2006) (Akron). The Court finds these cases to be inapposite. Simmons, Wright and Haar are factually distinguishable because a foreclosure judgment had not been entered prior to the filing of the petition in either of those cases. All of the opinions discuss the issue of surrender (either a purported intent to surrender or actual physical surrender) and none set forth an analysis of the doctrine of merger. Only one, Haar, addresses contractual liability.

Zak is most factually analogous. In Zak, although debtors were still residing in the home, they stated an intention to surrender the residential real estate. The mortgage company had obtained a prefiling foreclosure judgment. Postfiling, the debtors did not object to the mortgage company's motion for relief from stay, so an order granting the relief had been entered. The court hung its hat on an understanding of the term "surrender." According to the court, surrender only occurs when there is a legal relinquishment of rights to the secured lender. The court found that since debtors had not opposed the relief from stay motion and continued to live in the house, there was "[no demonstration of] any contractual act to surrender the Real Estate and Debtors have not relinquished the Real Estate to Chase" and permitted Debtors to take the deduction. Zak at 487. The Zak court did not undertake a review of the doctrine of merger herein advanced by UST. As set forth above, this Court finds the doctrine of merger to be controlling and therefore respectfully disagrees with the conclusion in Zak.

Similarly, the doctrine of merger was not part of the Haar decision. Although Haar did discuss "contractual liability," Haar did not involve a prepetition foreclosure judgment. As part of its analysis, the Haar court could not find any facts/events which operated to "suspend" or terminate the contract and went on to state that "a debtor's rights and duties under an otherwise enforceable prepetition contract remain, notwithstanding the collateral's surrender." Haar at 764. However, Haar left the door open for exceptions and specifically mentioned nonrecourse loans as a possible exception. Haar at

764. The Court finds that entry of a foreclosure judgment results in a liability akin to a nonrecourse loan. Once the contract is merged into the judgment, the mortgage creditor can enforce the judgment or foreclose on its *in rem* rights. It no longer has the ability to enforce the contractual terms of the note. This is a paramount difference between the present case and Haar. As a result of the distinguishing facts, the Court cannot follow the reasoning in Haar.

To the extent that Debtors attempt to argue that their ownership, and attendant right of redemption, promote a different outcome, the Court disagrees. It is true that Debtors' retain their right to redeem the property. According to Ohio Revised Code § 2329.33, this is accomplished "by depositing in the hands of the clerk of the common pleas . . . the amount of the judgment or decree upon which lands were sold . . . ." Even where the right of redemption is found, it is based not upon the contract, but upon the judgment. Moreover, it requires payment in full, not monthly payments.

## CONCLUSION

When a prepetition judgment of foreclosure is entered, the underlying contract is merged into the judgment, thereby extinguishing the contractual terms. The dissipation of the contract means that no amounts are "contractually due" and therefore Debtors may not claim an expense deduction for the mortgage on Line 42.

An order shall be entered immediately.

/s/ Russ Kendig
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List**:

Danny Lee Ballard
Marietta Napa Ballard
167 Plymuth Street
Bucyrus, OH 44820

Robert C. Cordrick
117 East Center St
Marion, OH 43302

Amy L. Good
Office of the US Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue East
Suite 441
Cleveland, OH 44114-1240